NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILLIAM ROBERT CONNALLON, | : | |
| Petitioner, | : | Civ. No. 08-1453 (GEB) |
| v. | : | |
| UNITED STATES OF AMERICA, | : | MEMORANDUM OPINION |
| Respondent. | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion of *pro se* petitioner William Robert Connallon ("Petitioner" or "Mr. Connallon") to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth in this Memorandum Opinion, issued without oral argument pursuant to Federal Rule of Civil Procedure Rule 78, Petitioner's motion is denied.

**I.  BACKGROUND**

On November 1, 2006, Mr. Connallon pled guilty to an information charging mail fraud, in violation of 18 U.S.C. §§ 1341 and 1342. (Gov't Opp'n, Ex. B at 1.) The guilty plea was entered pursuant to a plea agreement (the "Agreement") with the United States (the "Government") dated March 28, 2006 and signed on April 13, 2006. (Id. Ex. B at 1-9.) Petitioner was sentenced on March 19, 2007 to a term of 70 months imprisonment, followed by supervised release for a period of three years. (Id. Ex. E at 2-3.) He was also ordered to pay $6,904,131 in restitution to the victims of his crime. (Id. at 5.) On March 24, 2008, Mr. Connallon timely filed the instant motion to vacate, set aside, or correct his sentence pursuant to

28 U.S.C. § 2255.  (Docket Entry No. 1.)  Petitioner argues that his sentence should be reconsidered because he was denied effective assistance of counsel due to "temporary confusion" caused by his diabetes. (Petr.'s Br. 5.)  He also alleges that his sentence should be reviewed in light of the Second Chance Act of 2007.  (Id. at 14.)

## II.   DISCUSSION

A prisoner in federal custody may file a motion in the trial court challenging the validity of his sentence under 28 U.S.C. § 2255.  Section 2255 permits a court to vacate, correct or set aside a sentence if it was imposed in violation of the Constitution or laws of the United States, if it is in excess of the maximum authorized by law, or if it is otherwise subject to collateral attack. 28 U.S.C. § 2255.  Given the *pro se* status of the petitioner, the Court will construe the motion liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The issue in the instant case is whether the Petitioner may collaterally attack his sentence, despite clearly acknowledging that the terms of his plea agreement included a waiver of his right to appeal his sentence provided said sentence was within certain statutory guidelines.  The Court finds that Mr. Connallon may not do so, and his Section 2255 motion is accordingly denied.

### A. The Two-Prong Test From Khattak Upholds The Validity Of Petitioner's Waiver Of Appeal

In United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001), the Third Circuit developed a two-prong test to determine the validity of a waiver of appeal.  The first prong requires the court to determine if the waiver was entered into "knowingly and voluntarily."  Id. The second prong requires that the court assess whether enforcement of the waiver would result in a "miscarriage of justice."  Id.  The Third Circuit has ruled that if the waiver satisfies both

prongs of the Khattak test, then it will be enforced and it will preclude the court from reviewing the merits of the appeal. Id. at 561. As the court in Sanpietro v. United States, No. 05-5550, 2006 U.S. Dist. LEXIS 88693, at *1 (D.N.J. Dec. 5, 2006), wrote:

> [t]o hold otherwise would render such a waiver agreement essentially meaningless and would result in a mockery of the judicial system by affording criminal defendants the benefits of plea agreements, while shielding them from their own promises made under such agreements.

Id. at *18. Accordingly, the Court will apply the two-pronged Khattak test in determining the merits of Mr. Connallon's Section 2255 motion.

### B. The First Prong Of The Test is Satisfied Because Petitioner Knowingly And Voluntarily Entered Into The Plea Agreement.

To satisfy the first prong of the Khattak test, the Court must determine whether Mr. Connallon entered his guilty plea voluntarily and with sufficient knowledge that he was waiving his right to collaterally attack his sentence so long as it fell within certain statutory guidelines. Throughout the criminal proceedings in this case, the Petitioner has recognized that his Agreement with the Government would restrict his ability to appeal. First, the Petitioner and his attorney signed the April 13, 2006 Agreement which demonstrates Mr. Connallon's full understanding of the terms and conditions of the deal. (Gov't Opp'n, Ex. B at 7.) Indeed, the Agreement explicitly states that:

> William Connallon knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from a total Guidelines offense level of 25.

(Id. at 9.) Mr. Connallon also signed the November 1, 2006 plea application ("Plea

Application"), which stated that "[he] underst[ood] that [his] plea agreement provide[d] that under certain circumstances [he] ha[d] waived [his] right to appeal or collaterally attack the sentence imposed in this case."  (Id. Ex. C at 6.)

At his November 1, 2006 plea hearing ("Plea Hearing"), the Petitioner further acknowledged before this Court that he fully understood and accepted the terms and conditions set forth in the Agreement and the accompanying letter from the United States Attorney's Office.  (Id. Ex. D at 8:17-24; 9:20-24.)  Mr. Connallon also confirmed that he had discussed the Agreement with his attorney and that he was satisfied with his counsel's advice.  (Id. at 4:6-9.) Since the Petitioner was sentenced within the statutory guidelines range as stipulated by the parties in the Agreement, the waiver of appeal is effective and binding on both parties.  (Id. Ex. F at 12:6-9; 14:1-4.)

Mr. Connallon nevertheless appears to now argue that his severe diabetic condition interfered with his capacity to enter into the Agreement.  Petitioner claims in his Section 2255 motion that he was denied effective assistance of counsel because he suffered from "temporary confusion caused by [a] high level of stress coupled with low blood sugar causing a mental imbalance."  (Petr.'s Br. at 5.)  The Court finds Petitioner's argument unconvincing. Indeed, it remains unclear to the Court how Mr. Connallon's medical condition would impact the effectiveness of his counsel.

Additionally, the Petitioner has not offered any evidence to show that his medical condition interfered with his capacity to understand and accept the terms of the Agreement. Mr. Connallon acknowledged his competence and capacity to accept the Agreement at multiple times in the course of the criminal proceedings.  For instance, he signed the Plea Application which

required him to declare that "[he] [did] not believe that at the present time [he was] mentally ill or mentally incompetent in any respect." (Gov't Opp'n, Ex. C at 1.) Mr. Connallon and his attorney also acknowledged his competence at the beginning of his Plea Hearing (Id. Ex. D at 4:15-23.) Furthermore, the extensive medical records that Mr. Connallon submitted to the Court as part of his Section 2255 motion do not suggest that he suffered from any "temporary confusion" during the eleven-month span between the April 13, 2006 Agreement and the March 19, 2007 sentencing hearing ("Sentencing"). While these medical records do show that the Petitioner suffers from a severe diabetic condition, all of these documents were generated after his execution of the Agreement and after his Sentencing. (Petr.'s Br., Ex. Medical Records.) Since the medical records do not show that he suffered from any confusion on the critical dates in this case, the Court cannot assume that his condition was such as to make him incapable of entering into the waiver.[1]

In light of the foregoing, the Court finds that the Petitioner was aware that he was surrendering his rights by entering into the Agreement with the Government. There is no evidence to suggest that Mr. Connallon misunderstood the Agreement or that any of the documents were signed involuntarily. The Petitioner must therefore be deemed to have agreed to the waiver knowingly and voluntarily, which satisfies the first prong of the Khattak test.

---

[1] The critical dates in this case are as follows: the April 13, 2006 Plea Agreement (Gov't Opp'n, Ex. B at 7); the November 1, 2006 Plea Hearing and Application (Id. Ex. D at 1, Ex. C at 7); and the March 19, 2007 Sentencing Hearing. (Id. Ex. F at 1.)

## C. The Enforcement Of The Waiver Will Not Result In A Miscarriage Of Justice, So The Waiver Of Appeal Should Be Upheld.

The second prong of the Khattak test requires the court to consider whether enforcement of the waiver would result in a "miscarriage of justice." The Third Circuit has held that courts should take into consideration:

> [t]he clarity of the error, its gravity, its character (e.g. whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

Khattak, 273 F.3d at 563, *quoting* United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001). The Khattak court insisted that the "governing standard to apply in these circumstances is whether the error would work a miscarriage of justice." Id. Applying these guidelines to the case at bar, there was no "miscarriage of justice" here because the defendant knowingly and voluntarily agreed to the terms and conditions of the Agreement during the course of his criminal proceedings. In addition, Mr. Connallon's argument that he was suffering from "temporary confusion" during the proceedings is not supported by the medical records before the Court and is contrary to his affirmations of competency during the hearings.

The Court also understands Mr. Connallon to be arguing that he suffered a miscarriage of justice because his counsel was ineffective. (Petr.'s Br. at 5.) The Third Circuit has recognized that ineffective assistance of counsel throughout a plea proceeding may result in a miscarriage of justice sufficient to invalidate a waiver. United States v. Shedrick, 493 F.3d 292, 298 (3d Cir. 2007). According to the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), a petitioner may prevail on a claim of ineffective assistance of counsel if the petitioner shows:

6

> a reasonable probability that, but for counsel's unprofessional errors, the
> result of the proceeding would have been different. A reasonable probability
> is a probability sufficient to undermine confidence in the outcome.

Id. at 694.  Additionally, the defendant must show that his counsel acted in an objectively unreasonable fashion and that counsel's performance fell below "the wide range of professionally competent assistance." Id. at 689.  Mr. Connallon has failed in the case at bar to present any evidence to show that his counsel's performance fell below the level of professionally competent assistance.  The Petitioner appears to be arguing that his counsel was ineffective because his attorney was "not allowed to speak" at his Sentencing. (Petr.'s Br. at 11.)  The Sentencing transcript, however, clearly refutes Mr. Connallon's claim because his attorney, Mr. James Murphy, Esq., spoke multiple times during the hearing.  (Gov't Opp'n, Ex. F.)   Since the Petitioner has failed to present any other evidence to support his allegation of ineffective counsel, the Court holds that Mr. Connallon has not suffered a miscarriage of justice and his Section 2255 motion is therefore denied.[2]

---

[2] The Petitioner is effectively barred from bringing a Section 2255 motion. The Court therefore need not address the merits of Petitioner's claim made pursuant to the Second Chance Act of 2007, which allows a prisoner to spend a portion of the final months of imprisonment (not to exceed 12 months) under conditions that will "afford that prisoner a reasonable opportunity to adjust to and prepare for re-entry....into the community." Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657, 692 (2008).

### III. CONCLUSION

For the foregoing reasons, the Court will deny Mr. Connallon's motion. An appropriate form of Order accompanies this Opinion.

Dated: June 24, 2008

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.
